IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ANDRE WASHINGTON, §
§
Petitioner, §
§
VS. §   CIVIL ACTION NO. H-06-2136
§
NATHANIEL QUARTERMAN, §
§
Respondent. §

## MEMORANDUM OPINION AND ORDER

Andre Washington, a state inmate proceeding *pro se*, seeks habeas corpus relief under

28 U.S.C. § 2254 challenging his state murder conviction.  Respondent filed a motion for

summary judgment (Docket Entry No. 11), and submitted a copy of the state court record.

Petitioner filed a response.  (Docket Entry No. 12).

After consideration of the pleadings, the motion and response, the record, and the

applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this action.

## I.   Procedural Background

Petitioner was indicted for capital murder and pleaded guilty to the reduced offense

of murder under cause number 1009547 in the 183rd District Court of Harris County, Texas.

In accordance with the plea agreement, petitioner was sentenced to life imprisonment.

Petitioner's direct appeal was dismissed for lack of jurisdiction. *Washington v. State*, No.

01-05-00157-CR (Tex. App. – Houston [1st Dist.] 2005, no pet.) (not designated for

publication).  The Texas Court of Criminal Appeals denied petitioner's application for state

habeas relief without a written order on findings of the trial court without a hearing. *Ex parte Washington,* Application No. 64,843-01.

Petitioner raises the following grounds for federal habeas relief:

(1) an involuntary guilty plea because

    (a) he was "terrorized" into pleading guilty;

    (b) he was not admonished as to the nature of the reduced charges;

(2) actual innocence;

(3) ineffective assistance of trial counsel because

    (a) counsel had a conflict of interest;

    (b) counsel failed to communicate with petitioner or know the law;

    (c) counsel abandoned petitioner at the post-conviction stage;

(4) post-conviction error by the trial court in

    (a) failing to hold a hearing on his motion to withdraw guilty plea;

    (b) not construing the motion to withdraw as a motion for new trial;

    (c) holding a hearing without him during a critical stage.

Respondent moves for summary judgment, and argues that these grounds fail as a matter of law.

## II.   Factual Background

The state court record shows that petitioner was indicted for the capital murder of Marquita Gipson and her unborn child during the course of a kidnaping or attempted

2

kidnaping. Clerk's Record at 2. The State gave notice that the death penalty would be sought. On the day of trial, petitioner entered into a plea agreement with the State, agreeing to plead guilty to the murder of Gipson in exchange for a life sentence recommendation. Petitioner signed a judicial confession, waived his right to trial and to an appeal, and pleaded guilty to murder. The trial court accepted the plea and sentenced him to life imprisonment.

A few days later, petitioner filed a *pro se* motion to withdraw the guilty plea and a notice of appeal, contending that he had been misled. The trial judge held an informal but recorded meeting in open court with petitioner and all of the attorneys to discuss petitioner's complaints. At the end of the discussions, the trial judge advised petitioner that the court was without jurisdiction to withdraw his plea, and that his claims were factually unsupported. Petitioner's ensuing appeal was dismissed and his state habeas application was denied.

## III.    The Applicable Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) supplies the proper standards for reviewing the state court determinations. *See Jones v. Dretke*, 375 F.3d 352, 353-54 (5th Cir. 2004). Under the AEDPA, federal relief cannot be granted on claims adjudicated on the merits in state court unless the state court adjudication of legal issues was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1) and (2).

3

A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. The "unreasonable application" standard requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable. *Lockyer v. Andrare*, 538 U.S. 63, 75 (2003).

As to factual issues, the habeas petition should not be granted unless the state court's determination was based on an unreasonable determination of the facts in light the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Patterson v. Dretke*, 370 F.3d 480, 484 (5th Cir. 2004).

4

## IV.   Involuntary Guilty Plea

Petitioner claims he was "terrorized" into pleading guilty.  In support, he states that his attorney told him to either plead guilty or be sentenced to death, and the State threatened him with "false" capital murder charges to coerce him to plead to a reduced murder charge. He also claims that the trial court failed to admonish him on the reduced charge and that the written admonishments did not identify the alleged murder victim.

A guilty plea will be upheld on collateral review if entered into voluntarily, intelligently, and knowingly. *Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000).  The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  To prevail on his claim, petitioner must show that his plea was so much the product of misunderstanding, duress, or misrepresentation by others as to make the plea a constitutionally inadequate basis for imprisonment, and that he had "such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." *See James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995).

The record in the instant case shows that on January 19, 2005, shortly before the scheduled trial date, trial counsel sent petitioner a letter advising him as follows:

> As you requested, [co-counsel] and I went to visit with [the prosecutor] concerning a plea bargain.  We spent approximately an hour with him trying to convince him to offer twenty-five (25) years and he refused.  The offer is that they will reduce the same to murder for a life sentence.  I do not expect this to ever change.  The purpose of this letter is to cover with you what we anticipate the States['s] evidence will be at trial[.]  [W]e feel that you will

5

reach the same conclusion as we have, which is, that the only prudent choice you have, if you want to save your life, is to accept the [S]tate's offer of life for murder.

[The prosecutors] are discovering more information about your background and your relationship with [Gipson] which none is favorable to us. As a consequence, they do not feel that they have to plea bargain because they are confident they have a good case. They are ready for trial and ready to seek the death penalty[.] They believe they have a very good chance, based on the evidence, that a jury will find you guilty of capital murder notwithstanding our [k]idnaping issue. After the jury finds you guilty of capital murder, they are confident your past is sufficiently aggravating that the jury will sentence you to death. They also realize that you will [be] locked down on death row 24/7 in your 8x6 cell, without television, with limited reading material and limited visitation for 10 or 15 years before any appeals court will hear your appellant issues[.] [The prosecutors] honestly believe the worst scenario will be the jury will find you guilty of murder rather than capital murder and after hearing the punishment evidence the jury will give you life. Your legal team joins in the State's assessment. That is why [we] have advised you to plea. We strongly feel that the jury will more likely than not find you guilty of Capital Murder and based on the punishment evidence they will assess the death penalty. A victory would be a murder finding by the jury which has been offered to you. The chances of a not guilty verdict are slim to none in our opinion. We reached this opinion after [a lot] of long hours of research, interviewing witnesses, examining the evidence. We want to save your life.

As I told you yesterday, we need to start concentrating on your defense and not engaging in unrealistic plea bargaining. Once again, we need to verify where you were between 3:15 a.m. and 5:00 a.m. As you know, this is a critical time period. We have no witnesses other than you that can verify your whereabouts. There was a tremendous amount of cell phone activity by you before the murder and it stopped during this critical time period[.]

[Under state law], the State will be able to put on witnesses who will describe yours and [Gipson's] relationship and your state of mind before the murder[.] You have a copy of most of the witnesses' statements and I am sure you are familiar with their expected testimony[.] The witnesses are still singing the same song that you have on many occasions threatened to kill [Gipson].

The witnesses [we] investigated say the same.  We need witnesses to counter all of the State's testimony.  Someone who will say you loved her, respected her, treated her with loving care, that you never beat her, hit her, or threatened to kill her[.]  Please furnish us names [of] *anyone* who could testify to that loving relationship.

*Ex parte Washington*, pp. 37-38 (original emphasis).

On January 31, 2005, petitioner executed a Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession, and judicially confessed that he "on or about on SEPTEMBER 29, 2003, did then and there unlawfully, intentionally cause the death of MARQUITA GIPSON while in the course of committing and attempting to commit the kidnapping of MARQUITA GIPSON by SHOOTING MARQUITA GIPSON WITH A DEADLY WEAPON, NAMELY A FIREARM."  *Id.*, pp. 145-146.  The trial court admonished petitioner that punishment for the offense as a habitual offender was "a term of life or any term of not more than 99 years or less than 25 years" imprisonment.  *Id.*, p. 147.  The court then sentenced him to life imprisonment.

A few days after pleading guilty, petitioner filed a *pro se* notice of appeal and requested to withdraw his plea.  *Id.*, p. 161-166.  On February 22, 2005, petitioner sent the following letter to the trial judge:

I'm writing to you in regards of receiving your assistance; whereas, I have requested my appointed Counsel to withdraw my plea and he refuses to even file the proper paperwork.  I sincerely would appreciate your help in this delicate situation because I would have never pleaded out; but my lawyer stated that you had personal interest in my case and said if I didn't sign for life, you were going to make sure I got the death penalty.  So, ma'am, I was scared and tricked into signing.  I have already handwritten motions to, one, withdraw plea; two, notice of appeal; and three, I'm preparing a Motion for

7

New Trial, which are the three motions that [trial counsel] is refusing to submit to the Court. I thank you for your time, patience in this matter.

*Id.*, pp. 46-47. Petitioner presumably did not file the referenced motion for new trial, as none appears in the record. After receiving the letter, the trial judge held the informal meeting on March 15, 2005 to discuss petitioner's allegations, during which the following exchanges took place:

PETITIONER:     Well, I was put between a rock and a hard spot. These guys threaten my life with a death penalty. They said if I signed for life –

THE COURT:     Who is these guys?

PETITIONER:     The DAs.

THE COURT:     Which DAs?

PETITIONER:     [Name deleted], he brought the death penalty papers to me, saying he's going to be seeking the death penalty on me, and if I signed for a life sentence they would reduce it to a murder.

THE COURT:     Well, they were seeking the death penalty. There's no secret about that, that the Prosecutors wanted you to get the death penalty; and that is an option that they have. They have a right under the law to pursue that. That's not a death threat, but that's what they do if it's a case that they want to seek the death penalty[.] What did he do? What are your allegations that he did?

PETITIONER:     He say, on something that's not factual in this case, he said seek the death penalty against me for something I didn't do behind a bunch of hearsay or circumstantial evidence.

THE COURT:     You said threatened you.

PETITIONER:     He brought the papers to me saying seeking the death penalty. I took it as a threat. He gave it to me.

8

THE COURT:        He served you with a paper that said the State is seeking the death penalty?

PETITIONER:        Yes, ma'am.

THE COURT:        And you took that as a threat.  Is that all that you're alleging that the Prosecution did to make you – and you said that made you plea because you were afraid you'd get the death penalty?

PETITIONER:        Yes, ma'am.  That's just like to say he's holding a gun to my head.  You know what I'm saying?

THE COURT:        Is there anything else that you felt affected you entering the plea?

PETITIONER:        Me being a layman to the law, and the next thing my lawyers were saying that I didn't have no chance because they were looking at my background, my history, all this here.  Well, I did time for that; what does that have to do with this?

THE COURT:        Well, it does come in on the punishment phase in a death-penalty case.  The jury would hear all the details of whatever it is that you were alleged to have done in the past, whether you served all your time on it or not.  I don't know what was in your past, but I guarantee you these two guys over here would have drug up every witness, every detail of what happened.

PETITIONER:        A bunch of lies.  Bunch of lies.  They might have brought people who brought a bunch of lies that wasn't even factual eyewitnesses to the situation at hand.

*Id.*, pp. 55-57.  The exchange continued:

THE COURT:        Yeah, you have 30 days to file the Motion for New Trial, that time has definitely passed.  You did file a Motion to Withdraw Your Plea, which was filed February the 4th, so that was obviously just a few days after your plea.  But the allegations that you stated on there are not substantiated, let me just put it that way, by any evidence that I've seen that would give you or be a valid reason to withdraw your plea of guilty.  As far as I can tell at this

9

point, you just wish you hadn't plead guilty and you'd like to start over; it that a fair assessment?

PETITIONER:     No, ma'am, I did not understand the law.  I did not understand what was going on at the time; me being a layman to the law, this is what I'm saying.

\*     \*     \*     \*

Like I told them, I wanted to take it to trial.  They talking about, no, if I go trial, I'm going to be found guilty.  I'm going to be given the death penalty, and I'm going to be sitting on death row for eight years, and this crap here. This is what was told to me.  I'm sitting here telling you what was told to me. That's why I filed this to come back to court, hoping that I could get a new trial.  I'd rather take it to trial than go through this here for something that I didn't do.  I'd rather prove it with the people.

*Id.*, pp. 60-61.

Petitioner's three defense attorneys submitted affidavits to the state court, denying that they or anyone else had stated or suggested that the trial judge had a personal interest in the case, denying the allegations made by petitioner in his motions and letter to the trial judge, and emphasizing their opinion that the plea agreement was in petitioner's best interests.  *Id.*, pp. 95-100.   Counsel attested to the fact that she "personally explained the Plea Admonishments to [petitioner] and gave him an opportunity to ask me questions before I filed them with the Court.  I also asked him if he was sure that this was what he wanted to do.  He indicated to me that it was."  *Id.*, p. 95.  Counsel also testified to her belief that petitioner "was fully informed of the consequences of his plea, of the rights he was waiving

10

in entering the plea of guilty, and that he entered into this plea agreement knowingly and without coercion or duress of any kind." *Id.*, pp. 97-98.

In rejecting petitioner's claims of an involuntary guilty plea, the state trial court found the affidavits of petitioner's counsels to be true and credible, and made the following relevant findings:

5. The [c]ourt finds, based on the credible affidavit of [trial counsel], that applicant pled guilty after having been informed of the consequences of his plea and the rights he was waiving and applicant pled knowingly and without coercion or duress.

6. The [c]ourt finds unpersuasive the applicant's claim that he was terrorized and improperly induced to plead guilty by a letter sent by trial counsel.

7. The court finds unpersuasive the applicant's claim that he was not properly admonished as to the charge against him.

8. The court finds unpersuasive the applicant's claim that his trial counsels conspired with the State against applicant.

9. The [c]ourt finds, based on the credible affidavits of [trial counsels], that [trial counsel] reasonably believed that there was not a legal basis to file a motion to withdraw plea or motion for new trial on applicant's behalf and further that counsels reasonably believed that it was not in applicant's best interest to withdraw his plea.

The state court also entered the following relevant conclusions of law:

1. The applicant fails to overcome the presumption of voluntariness of his plea created by the trial court records.

2. The applicant fails to show that his trial counsel's advice regarding his plea was unreasonable or that it rendered applicant's plea involuntary.

11

3. The applicant fails to show in all things that trial counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

4. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

5. The applicant fails to allege facts which, if true, would show, by clear and convincing evidence, that, despite the evidence of guilt that supports the conviction, no reasonable juror could have found the applicant guilty in light of the alleged new evidence.

6. In the alternative, and without waiving the foregoing, the applicant's habeas challenge to the sufficiency of the evidence is not cognizable in post-conviction habeas proceedings.

7. The applicant fails to show that the [c]ourt abused its discretion in failing to timely hold a hearing on his motion for new trial.[1]

8. In the alternative, the applicant cannot demonstrate harm by any failure by the [c]ourt to conduct a hearing on his motion for new trial, since the applicant made no claim in his motion for new trial which he may not now bring in the instant habeas proceeding; likewise, there is no bar to the applicant developing the facts necessary to support his post-conviction claims.

9. The applicant fails to allege sufficient facts which, if true, would show that he was improperly excluded from a trial court hearing.

*Id.*, pp. 102-105 (case and record citations omitted).

---

[1]No pleading entitled "motion for new trial" appears in the record before this Court. The state court may have been referring to petitioner's *pro se* motion to withdraw guilty plea, which, if granted, would have had the effect of granting a new trial under state law. *State v. Evans*, 843 S.W2d 576 (Tex. Crim. App. 1992).

12

Petitioner entered his guilty plea in open court and was advised by counsel and the trial court of his rights, waivers, and the full range of punishment for the offense. *Id.*, pp. 145-49. He executed the written plea admonishments in which he acknowledged his understanding of the range of punishment for his offense; his waiver of the right to appeal, including any right to file a motion for new trial; his understanding of the court's admonishments and the consequences of his plea; that his plea was "freely and voluntarily made" and that counsel's representation was satisfactory, effective, and competent. *Id.*, p. 149. Petitioner further judicially confessed to committing the offense as charged in the indictment and set forth on the plea documents, and to the truth of the enhancement paragraphs. *Id.*, pp. 145-146. These statements in the record carry a strong presumption of verity. *See Blackledge v. Allison*, 431 U.S. 63, 73 (1977).

In determining whether or not to plead guilty, a defendant should be made aware of the relevant circumstances and likely consequences so that he can make an intelligent choice. *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995). The recommendation by petitioner's attorneys to accept a life sentence when faced with a possible capital murder conviction and death sentence is better characterized as advice, rather than coercion. Petitioner does not show that his plea was so much the product of misunderstanding, duress, or misrepresentation by counsel as to make the plea a constitutionally inadequate basis for imprisonment.

13

Nor does petitioner's claim of coercion based on threats of "false" capital murder charges pass muster. His statements at the informal meeting show that he construed the death penalty notice itself as a "threat," like "holding a gun to my head." As explained by the trial judge during the hearing, the State had the right to seek the death penalty. Neither the State's decision nor petitioner's disagreement with that decision constitute misunderstanding, duress, or misrepresentation by the State as to make petitioner's plea a constitutionally inadequate basis for his imprisonment.

The state trial court denied habeas relief on petitioner's claims of an involuntary plea. The Texas Court of Criminal Appeals relied on the trial court's findings in denying habeas relief. The state court's findings reasonably applied the law to the facts, consistent with clearly established federal law, and were not objectively unreasonable. An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumption of correctness of the state court's adjudication of petitioner's claims. Habeas relief is not merited. 28 U.S.C. § 2254(d)(1).

## V.    Ineffective Assistance of Counsel

Petitioner alleges two instances of ineffective assistance of counsel: (1) trial counsel's conflict of interest, and (2) trial counsel's lack of post-conviction assistance. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that counsel's actions fell below an objective standard of reasonableness and that petitioner suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668 (1984); *Martin v. Cain*, 246 F.3d 471, 477

14

(5th Cir. 2001). The district court may resolve an ineffective assistance claim if counsel either rendered reasonably effective assistance or no prejudice is shown. If a petitioner fails to make one of the required showings, the court need not address the other. *Strickland*, 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, the Court must indulge a strong presumption that the performance falls within the wide range of reasonable professional assistance and that the challenged action might be considered sound trial strategy. *Id.* at 689. As to the prejudice prong of the inquiry, petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

When a claim of ineffective assistance of counsel is based on an alleged conflict of interest, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance, thereby rendering the outcome unreliable. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). If a defendant shows that his attorney's conflict of interest actually affected the adequacy of his representation, he need not demonstrate prejudice before he may obtain relief. *Id.* at 349-350.

In his first instance, petitioner claims that trial counsel's representation was conflicted because petitioner filed a complaint against him with the court. The only such complaint appearing in the record is petitioner's post-conviction letter to the trial judge. Petitioner does not, and cannot, show that such letter adversely impacted the representation provided by

15

counsel regarding the guilty plea, as any conflict caused by the letter would have developed after the conviction and sentencing.

The Court also notes that on March 5, 2004, trial counsel was appointed to represent petitioner. The docket sheet for that date reflects that

> [Petitioner] indicated he did not wish for [counsel] to continue representing him. However, a final determination was not made at this time as to [counsel's] status [as appointed counsel]. After a period of time, [counsel and petitioner] had a discussion, [petitioner] expressed his desire to keep [counsel] and in open court, [the trial judge] determined that [counsel] would remain as court appointed [counsel].

*Ex parte Washington*, p. 17. No explanation for this event appears in the record. To the extent petitioner asserts this incident as giving rise to counsel's alleged conflict, the claim fails. Petitioner's subsequent voluntary guilty plea waived all non-jurisdictional defects in the proceedings against him, including claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). Petitioner does not demonstrate that this incident in March of 2004 created an actual conflict that rendered ineffective counsel's assistance at his guilty plea in January of 2005, particularly in light of his agreement in the plea record that he was satisfied with counsel's representation.

In the instant case, petitioner presents only conclusory allegations that counsel was actually conflicted and that such conflict adversely affected his performance. The state court specifically found that petitioner was provided reasonably effective assistance of counsel,

and that he failed to meet his burden of proving ineffective assistance of counsel.  No grounds for habeas relief are shown.

In his second instance of ineffective assistance, petitioner asserts that trial counsel refused to file a motion for new trial, conspired with the State and court to deny him a new trial, and abandoned him during post-conviction proceedings.  The Supreme Court has not determined that the thirty-day post-conviction "window" for filing a motion for new trial is a critical stage in which a defendant is entitled to effective assistance of counsel.  Indeed, "The Fifth Circuit has not yet determined whether the right to counsel attaches on a motion for new trial."  *Graves v. Cockrell*, 351 F.3d 143, 155 (5th Cir. 2003).  Accordingly, petitioner cannot show that the state court's denial of habeas relief on this issue was contrary to established Supreme Court precedent.

Regardless, in rejecting petitioner's claims of ineffective assistance, the state trial court made the following relevant findings of fact and conclusions of law:

9. The [c]ourt finds, based on the credible affidavits of [trial counsels], that [trial counsel] reasonably believed that there was not a legal basis to file a motion to withdraw plea or motion for new trial on applicant's behalf and further that counsels reasonably believed that it was not in applicant's best interest to withdraw his plea.

3. The applicant fails to show in all things that trial counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

17

4.    The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

*Ex parte Washington*, pp. 103-104 (case and record citations omitted). The state court further concluded that petitioner was not harmed because he made no claim in his *pro se* motion for new trial that he could not pursue in his state habeas proceeding, and he was not barred from developing the facts necessary to support his post-conviction claims. *Id.*, pp. 104-05. The state court further found as "unpersuasive [petitioner's] claim that his trial counsels conspired with the State against [him]." *Id.*, p. 97.

During the informal meeting, counsel stated that "I'm not urging the Motion for New Trial because I am still of the opinion that if he's found guilty, that a jury, Harris County jury, in a heartbeat would give him the death penalty. And my whole goal in this was to save his life. I've accomplished that[.]" *Id.*, pp. 66-67. Petitioner's trial attorneys submitted affidavits attesting to their professional opinion and belief that the plea agreement was in petitioner's best interest, that filing a motion for new trial was not in his best interest and that they did not believe the plea was involuntary, and that they did not know of any legal basis for a new trial or withdrawal of the plea. *Id.*, pp. 96, 98, 100. Petitioner does not meet his burden under *Strickland* of showing that counsels' decisions were not reasonable trial strategy.

The state trial court rejected petitioner's habeas grounds. The Texas Court of Criminal Appeals relied on the trial court's findings in denying habeas relief. The state

18

court's findings reasonably applied the law to the facts, consistent with clearly established federal law, and were not objectively unreasonable. An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumption of correctness of the state court's adjudication of petitioner's arguments. Habeas relief is not merited. 28 U.S.C. § 2254(d)(1).

## VI.   Actual Innocence

Petitioner asserts a "bare innocence" claim under *Herrera v. Collins*, 506 U.S. 390 (1993). (Docket Entry No. 2, p. 8.) Such claim is not an independently cognizable federal habeas claim in a non-capital state felony offense. *See Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006); *see also House v. Bell*, __U.S.__, 126 S. Ct. 2064 (2006) (declining to resolve whether a stand-alone *Herrera*-type actual innocence claim is a cognizable habeas corpus claim in non-capital offenses).

Petitioner argues that he is actually innocent of the murder charge because the State never recovered the murder weapon or DNA from the scene and thus could not prove that he committed the offense, and that the evidence proves he was not with Gipson at the time of her death. In short, petitioner complains that he is actually innocent because the evidence is insufficient to support the conviction for murder. Accordingly, this Court will review petitioner's claim as one challenging the sufficiency of the evidence.

In reviewing the sufficiency of the evidence, the federal standard for review is whether any rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Petitioner's argument in the instant case fails for two reasons.  First, no federal constitutional issue is raised by the failure of a Texas state court to require evidence of guilt corroborating a voluntary guilty plea. *Smith v. McCotter*, 786 F.2d 697, 702 (5th Cir. 1986).  Second, petitioner signed a judicial confession admitting the essential elements of the offense. *Ex parte Washington*, pp. 91-92. The *Jackson* mandate that sufficient evidence exist from which a rational fact finder could find guilt beyond a reasonable doubt is inapplicable to convictions based on a guilty plea. *See Kelley v. Alabama*, 636 F.2d 1082, 1083-84 (5th Cir. 1981).  Petitioner's claim is not proper for federal habeas review.

Petitioner also asserts a claim of actual innocence based on "new evidence."  As recently reaffirmed by the Supreme Court, "[a] petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt – or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House*, 126 S. Ct. at 2077.  As proof of his innocence in the instant case, petitioner submitted a purported investigator's report from the medical examiner's office and four typewritten pages regarding witness statements. *Ex parte Washington.*, pp. 71-75. Petitioner admits, however, that these materials were known and available to him prior to the guilty plea. (Docket Entry No. 12, p. 4).  Thus, they do not constitute "new evidence."  Regardless, these documents are not signed or notarized, and the statements clearly are incomplete copies.  Moreover, the

20

investigator's report by its own terms is investigatory in nature, and is not a final report or official finding. In rejecting petitioner's claim of actual innocence based on these materials, the state court made the following relevant conclusion:

> 5.   The applicant fails to allege facts which, if true, would show, by clear and convincing evidence, that, despite the evidence of guilt that supports the conviction, no reasonable juror could have found the applicant guilty in light of the alleged new evidence.

*Ex parte Washington*, p. 104.

The state trial court denied relief on this issue. The Texas Court of Criminal Appeals relied on the trial court's findings in denying relief. Petitioner fails to show that the state court's determination on this issue was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams*, 529 U.S. at 404-05. Nor does petitioner present clear and convincing evidence rebutting the state court's findings. Respondent is entitled to summary judgment on this ground.

## VII.   Post-Conviction Trial Court Error

Petitioner claims that the trial court erred in not setting a hearing on his *pro se* motion to withdraw guilty plea, in failing to construe the motion as a motion for new trial, and in holding a hearing on the motion in his absence. His claims are without merit.

In arguing the denial of his presence at a hearing, petitioner references a continuation of the informal meeting by the trial judge and attorneys after he was taken back to his holding cell. The record of the informal meeting shows that after the trial judge and parties

21

discussed the allegations made by petitioner in his letter, the judge asked petitioner, "Does that answer your questions for today?"  Petitioner replied, "Yes, ma'am.  If I have anything else I'll write to you."  The bailiffs then escorted petitioner from the courtroom.  *Ex parte Washington*, pp. 62-63.  After petitioner's exit, the informal meeting continued on the record for a short while, with the attorneys informing the court that the district attorney who had served the death penalty notice on petitioner did so in the presence of defense counsel and without saying anything to petitioner, in rebuttal of petitioners' contrary claim.  *Id.*, p. 64.  Defense counsel reiterated his opinion that a new trial would not be in petitioner's best interest because if found guilty, petitioner would receive the death penalty.  *Id.*, p. 66.  No judicial action was taken or decisions made in petitioner's absence, and he submits no probative evidence of any material "rebuttal" evidence he was prevented from presenting.  *Id.*, p. 31.  No violations of petitioner's constitutional rights are shown.

Petitioner urges that under *State v. Evans*, 843 S.W.2d 576 (Tex. Crim. App. 1992), his motion to withdraw guilty plea had the same force and effect as a motion for new trial, and that the trial court erred in not setting a hearing on the motion for new trial.  Petitioner's reliance on *Evans* is misplaced.  In *Evans*, the Texas Court of Criminal Appeals recognized that the *granting* of a motion to withdraw guilty plea has the same functional effect as granting a new trial for purposes of appeal.  *Id.* at 578.  Petitioner here does not show that the trial court violated his federal constitutional rights by not holding a hearing on his motion

22

to withdraw guilty plea. In discussing the motion to withdraw guilty plea during the informal meeting, the trial judge informed petitioner as follows:

> You did file a Motion to Withdraw your Plea, which was filed on February the 4th, so that was obviously just a few days after your plea. But the allegations that you stated in there are not substantiated, let me just put it that way, by any evidence that I've seen that would give you or be a valid reason to withdraw your plea of guilty.

*Ex parte Washington*, p. 60.

To the extent petitioner seeks federal habeas relief based on the state court's post-conviction rulings and actions, no cognizable habeas ground is raised. In claiming error by the trial court, petitioner argued he was entitled to a hearing under state law, and that the trial court failed to follow state law. The state trial court found no state law violation or harm to petitioner. This Court will not review a state court's interpretations of its own law in a federal habeas proceeding. *See Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) (holding that a state court's denial of a motion for new trial was not reviewable in a federal habeas proceeding); *see also Bradshaw v. Richey*, 546 U.S. 74, 126 S. Ct. 602, 604 (2005) ("[W]e have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). No denial of a federal constitutional right is shown.

The state trial court denied habeas relief under petitioner's claims. The Texas Court of Criminal Appeals relied on the trial court's findings in denying state habeas relief. The state court's findings reasonably applied the law to the facts, consistent with clearly

established federal law, and were not objectively unreasonable. An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumed correctness of the state court's adjudication of petitioner's arguments. Habeas relief is not merited. 28 U.S.C. § 2254(d)(1).

## VIII.  Conclusion

Accordingly, the Court **ORDERS** as follows:

1. Respondent's motion for summary judgment (Docket Entry No. 11) is **GRANTED**.

2. The petition for a writ of habeas corpus is **DENIED**.

3. This cause of action is **DISMISSED WITH PREJUDICE**.

4. A certificate of appealability is **DENIED**.

5. Any and all pending motions are **DENIED AS MOOT**.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the 3rd day of July, 2007.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

24